## Blood, Appellant, *v.* Ludlow Carbon Black Co., Ltd.

*Partnership—Inventions of the firm—Ownership.*

In the absence of an agreement or intent of the partners to the contrary, an invention which, in its nature, origin and progress, was directly within the line of the partnership enterprise and which was the product of the joint labor of the members of the firm, is partnership property.

*Partnership agreement—Invention—Ownership.*

A partnership agreement, providing that the tools, machinery, fixtures, stock and supplies now on hand and belonging to said firm shall be taken and deemed the capital of the firm, each owning the undivided one half thereof, will not prevent such invention from becoming partnership property, where the partners further agree not to " exercise or follow the said trade or any other to their private benefit or advantage, but do their endeavors as best they can to the utmost of their skill and ability for their mutual advantage, with the stock as aforesaid and the increase thereof; " with a further provision, that " should either of said parties die during the continuance of this agreement, his interest in said partnership shall pass to and become the property of the surviving partner, unless one of said parties shall marry, in which case this clause in the contract shall become void."

*Equity—Amendments—Partnership invention—Decree for account.*

Where a bill in equity averred that, in such a case, after the death of one of the partners, the administrator of the deceased partner, who was also his father, assigned his interest, as administrator and heir, to a third party who had notice of the claim of the surviving partner, and praying

for a cancellation of the assignment, in such case an amendment praying an account will be allowed, after hearing before a master.

Argued May 4, 1892.   Appeal, No. 18, July T., 1892, from decree of C. P. Warren Co., Dec. T., 1889, No. 41, dismissing bill for cancellation of assignment of patent, and refusing amendment to bill for account, etc.   Before PAXSON, C.J., STERRETT, GREEN, MCCOLLUM and MITCHELL, JJ.

The master, J. H. Donly, Esq., found, in effect, the following, among other facts: On Dec. 17, 1883, the plaintiff, Arthur R. Blood, and his brother Homer E. Blood, entered into written articles of copartnership for the manufacture and sale of carbon black, under the name of the Eagle Mfg. Co.   The articles, after stating the objects of the partnership as recited in the opinion of the Supreme Court, provided that " the tools, machinery and fixtures and stock and supplies now on hand and belonging to the said firm shall be taken and deemed the capital of the said firm by the parties hereto, each owning the one half undivided part thereof."   The further provisions of the partnership articles are recited in the opinion of the Supreme Court.   This partnership continued until the death of Homer in Dec., 1885.   During the existence of the partnership and some time after its formation, Arthur and Homer, with the assistance of their brother Bryant H. Blood, who was in the employ of the partnership, made and put in use an invention for the manufacture of carbon black.   Homer E. Blood died unmarried and without issue.   Erastus R. Blood, his father, took out letters of administration on his estate.   The plaintiff Arthur R. Blood, Bryant H. Blood, and Erastus R. Blood, as administrator of Homer E. Blood, made application for letters patent on the invention mentioned ; but, before the application, and after Homer's death, Bryant H. had assigned his interest to the plaintiff ; and, on Aug. 7, 1888, the letters patent were issued to the plaintiff and Erastus R. Blood as administrator of Homer.   Aug. 16, 1888, Erastus, as administrator, and also individually, under his hand and seal, assigned his undivided one third of the patent to the defendant, who had notice of plaintiff's claim.

The bill alleged that, by the articles of partnership, " all inventions pertaining to and useful in said copartnership busi-

ness made by the said Homer E. Blood, prior to his death, individually, or jointly with others, became and were then and there lawfully vested in your orator," and prayed that the assignment thus made be declared null and void and that the same be delivered to the plaintiff to be canceled.    Answer and replication were duly filed.

The master reported that the plaintiff, on the death of Homer, acquired no further right or interest to the invention and the patent, under the agreement of partnership.

After the master had filed his original report and upon the argument of the exceptions thereto before the court, the plaintiff asked leave to amend the bill : (1) So as to aver that the invention, which is the subject of the suit, became the property of the partnership composed of himself and Homer E. Blood, by express agreement of the partners.    (2) So as to aver certain facts whereon to base a prayer for an account.    (3) So as to aver certain facts whereon to base a prayer for a contribution to the expenses paid by the plaintiff in procuring letters patent for said invention.    (4) So as to aver facts to show that defendants are estopped from claiming title to said invention, or an interest therein.

The court, MEHARD, P. J., of the 35th judicial district, specially presiding, in an opinion filed, held that the first amendment should be allowed, on payment of certain costs, but refused the others, under the Act of May 4, 1864, § 2, P. L. 775, Purd. 701, pl. 68, and March 22, 1806, § 6, 4 Sm. L. 329, Purd. 92, pl. 1, as they did not " affect the merits of the matter in controversy."

On re-hearing Bryant H. Blood was the only witness called, and he testified that the partnership agreement was drawn as it was to prevent their father inheriting on the death of either partner.    As to the title to the patent in dispute, he testified : " It was concluded that it would be necessary for all three of us to join in the application for a patent, if the patent were ever applied for, as joint inventors, and that we should all assign to the partnership of A. R. and H. E. Blood.    It was evident from their [the partners'] conversation that it [the invention] was partnership property."    He also testified, in effect, that he was in the employ of the firm and helped and contributed to the success of the patent, and his brothers,

A. R. and H. E. Blood, paid him and sent him through college, as a compensation, and that his expenses at college were paid by the firm, and so appeared on the firm books; and after Homer's death his expenses were paid by Arthur.

The master, in his supplemental report, reviewing this testimony, said: Bryant "seemed a very candid witness; but his testimony altogether failed to support, sustain or establish the added averment set forth in plaintiff's bill, as amended." The master found against the plaintiff and recommended that the bill be dismissed.

The court, in an opinion, dismissed exceptions to the report of the master, holding, in effect, that, as the articles of partnership designated material substances as the partnership property, the "increase" would be of like kind, but this would not include an invention. The court directed a decree dismissing the bill.

*Errors assigned* were (1) not allowing all the proposed amendments; (2) affirming the master's conclusion that Homer's interest in the patent passed to his father, as his administrator and heir; (3) holding that the invention was not partnership property and as such passed to the surviving partner; (4) not directing defendant to reconvey the one third interest to plaintiff; and (5) dismissing the bill; the assignments not quoting the record.

*J. C. Sturgeon* and *Samuel T. Neill*, for appellant.

*Wm. D. Brown*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 30, 1892.

Whether a partnership firm, being in law an entity distinct from the members that compose it, and, like a corporation, having no soul, can discover or invent anything, in the sense discussed by the learned master, is a metaphysical subtlety over which we need spend no time. As a practical question in the administration of the law, a firm may as well be said to invent a machine as to invent a new enterprise or a new trade name, or anything else in its business. All operations and ventures by a firm are products of the mind of one or more of the members; the firm, as a separate entity, has no more mind to conceive and carry out a purchase of merchandise in one market and a sale in another, than it has to conceive a mechanical idea and embody

it in a machine. The minds are individual, but the results are joint, and the results of joint action of the members are results of action by the firm, and if in the course of the partnership business, the result becomes partnership property.

In the present case the two partners owned certain machinery as part of their business plant. It was admittedly partnership property. To this machinery the two partners, and another brother as an employee, from time to time invented improvements, each, as found by the master, "contributing some feature or features of invention to these improvements; and from time to time A. R. and H. E. Blood (the partners) changed and conformed the machinery, in use at their said works, to these improvements." Here was the direct product of joint labor on the partnership property in the prosecution of the partnership business, resulting in partnership profit. It does not admit of doubt that the whole operation from its inception was a partnership affair, and its result was partnership property. The learned court below conceded that the machinery resulting from the combined work was partnership property, but drew a distinction in this respect between the machinery itself and the mechanical idea which produced it. There is no substantial basis for such a distinction; one was as much the joint production of the partners' minds as the other was of their hands; both were equally in the line of the business, and the partners themselves treated them as alike joint property. In the absence of any agreement or intent of the partners to the contrary, the general principles of partnership would require us to hold that the invention, as well as the resulting machine, was part of the partnership business and property. So far from any such intent appearing, the written articles of partnership, and the conduct of the partners, if not their express agreement, unite to establish an actual intent in entire accord with that which the law presumes. If it were needed, we should have no hesitation in reaching this conclusion on the testimony of Bryant Blood to an express agreement as to this very invention. He was one of the joint inventors and brother of the other two. He was also one of the patentees, but he honestly assigned his nominal interest to his brother Arthur, the surviving partner, thereby recognizing it as partnership property, an act in itself of great weight as evidence of the truth of that

claim. The master says "he seemed a very candid witness," and he certainly was in position to know all about the subject. But it is not necessary to go into an examination of his testimony, since the articles of partnership themselves lead to the same conclusion. By them the brothers associated themselves " in the art or trade of manufacturing, selling, vending and retailing all sorts of wares, goods and commodities belonging to the trade or business of manufacturers of gas black, etc.," and they agreed not to " exercise or follow the said trade or any other to their private benefit or advantage, but . . . . . do their endeavors as best they can to the utmost of their skill and ability for their mutual advantage, with the stock as aforesaid and the increase thereof." The community.of interest intended to be created is further shown by this very notable provision : " Should either of said parties die during the continuance of this agreement, his interest in said partnership shall pass to and become the property of the surviving partner, unless one of said parties shall marry, in which case this clause in this contract shall become void." Nothing could be clearer than the intent that whatever was done by joint efforts for the joint benefit should not only be joint property during the life of both, but also, except in the contingency of marriage, should become the property of the survivor. The learned judge below was influenced by the consideration that the invention was not in the minds of the partners when the agreement was made. But neither was the new machinery, which was undoubted firm property ; neither was any particular new venture in the business which was the result of joint suggestion or action. What were in their minds were results, not means. The latter were necessarily left to the future, but to them they pledged their mutual endeavors, their *skill* and ability, and the results were to be for their mutual advantage.

As already discussed, this invention, so far as it had gone during Homer's life, was the joint production of their united brains, industry and skill, in the very business of the partnership. No question arises of extraneous individual effort of one partner, or of an invention outside of the line of the partnership business. The invention, in its nature, its origin and its progress, was directly within the line of the partnership enterprise, and was partnership property. As such it passed, by the

agreement, to the surviving partner as his own property, and, of course, without any duty to account to the father as the legal distributee of Homer's estate. The instrument was proved as a will, and perhaps it was convenient to have it in that form for the guidance of the administrator's account, but it passed the title to Homer's interest in the partnership as an agreement, not as a will. It operated from its date, not from the death of Homer, though that was the event on which the title was to pass. This provision would, by its own terms, have been canceled by the marriage of either partner, or the whole agreement could have been terminated by the dissolution of the firm, but, failing either of these events, the provision for the passing of the whole property to the survivor was as binding and irrevocable as any other part of the contract. It had none of the ambulatory character of a will.

It follows, therefore, that Erastus Blood had no proprietary interest at all in the invention, either as administrator or as father of Homer. He was joined in the letters-patent by reason of the requirements of the statutes, but his title was a dry trust for the surviving partner, who was the real owner: U. S. Rev. Stat., § 4896; N. W. Extinguisher Co. v. Phila. Co., 1 Baun. & Arden, 177. The defendants therefore took no title by the assignment from him, for he had none to give, and, as the master has found that they took with notice of complainant's rights, they should be held liable to an account, and the amendment adding a prayer to that effect should have been allowed.

The decree is reversed, the bill reinstated, the amendment praying an account allowed, and the record remitted, with directions to enter a decree for an account and such other relief as may be required to carry out the views indicated in this opinion.